UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

OAK - HEE KIM, a/k/a
OAK - HEE RUESCH

V.

MASSACHUSETTS COMMISSION
AGAINST DISCRIMINATION, et al.

CIVIL ACTION NO.

FILED
IN CLERKS OFFICE
2020 OCT 26   AM 12: 34
U.S. DISTRICT COURT
DISTRICT OF MASS.

FILED
IN CLERKS OFFICE
2020 NOV -9   PM 4: 53
U.S. DISTRICT COURT
DISTRICT OF MASS.

## COMPLAINT

## Parties

1. The plaintiff is a resident of Newtonville, Eastern County, Massachusetts and a citizen of the United States.

2. The defendant Massachusetts Commission Against Discrimination (MCAD) Boston, Eastern County and a State Agency of the United States.

3. The defendant Eric Bove, employed at MCAD Boston, Eastern County and a citizen of the United States.

4. The defendant James Brisline, contractor for the MCAD Springfield office, Western County and a citizen of the United States.

5. The defendant Shree McClain, employed at MCAD Worcester, Western County

and a citizen of the United States.

6. The defendant Gibert May, employed at MCAD Springfield, Western County and a citizen of the United States.

7. The defendant Jamie Williamson, employed at MCAD Boston, Eastern County and a citizen of the United States.

## Jurisdiction

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## Facts

9. Plaintiff (I, me, my) injured, injures by the most malignantly toxic desnowing/deicing chemical products (Peladow, etc.) exposure by Newton Housing Authority (NHA)'s unlawful housing practices based on my handicap. I made complaint to Housing and Urban Development (HUD) for 42 usc 3601 et seq. May 22, 2013, HUD No. 01-13-0376-8; July 18, 2013, referred to MCAD by 42 UCS 3610 (f): "Fair Housing Asistance Program (FHAP) for FY92." The defendant Eric Bove, MCAD Boston transferred my complaint to MC-AD Springfied for the statutory nullity, and the defendant Shree McClain (SM), investigator dodged; objectively ruled, "On June 6, 2013, ... [Kim] field a complaint with this Commission against NHA, et al. in violation of M.G.L.c. 151B. §4, 4A, 7A?" ... Ms. Sutherland (Executive Director of NHA), Mr. Hacker, and Mr. Pugilese [sic] each had the requisit authority, there is insufficient evidence to support that they acted in deliber-

ate disregards of Complainant's right under the M.G.L.c. 151B to raise an inference of intent to discriminate."? This, coincided with NHA's lawyer John Egan, who wangled to MCAD, July 12, 2013. This Court interpret the following:

(a) 42 USC 1981 (a)(c); 42 USC 1983; 42 USC 1985 (2) ?;

(b) Fair Housing Amendment Act (FHAA); 42 USC 3602 (h); 29 USC 794; 42 USC 12101 et seq.; 24 CFR 8.3; 24 CFR 9.131(b); 24 CFR 9.132 (c); 42 USC 3603;

(c) 42 USC 3604 (c); 24 CFR 100.50 (b); 24 CFR 100.75 (c)(1) and (2);

(d) 42 USC 3604 (f) ("discrimination includes a refusal to make reasonable accommodations in rules, etc."); 42 USC 3604 (f)(2); 24 CFR 100.60 (a) and 100.202 (b); 42 USC 3604 (f)(3)(B); 24 CFR 100.204 (a); 42 USC 3604 (f)(4); M.G.L.A. 151B §4 4A. 4A(2) 4B; 151B 9 (housing discrimination); 42 USC 3610 (f) / FHAP for FY 92;

(e) 42 USC 3612 (f)(3), "Enjoins the Respondents, their agents, employees, and all other persons in active concert or participation with them from discriminating against any person based on handicap in any respect of the rental of a dwelling." Pursuant to paragraph 812 (f)(3) of the Act 42 USC 3612(f)(3) assesses a civil penalty against each of the Respondents." HUDALJ 09-91-1195-1 (1991); and

(f) 42 USC 3617; "any rights granted or protected by Sec. 803, 804, 805, or 806"/42 USC 3631 - Violence?

In addition to the above, there maybe other laws based on defendants's factum can be actionable for individual liabilities must be responsible by the each of the defendants, whom they injured me against my handicap, minority, pauper, etc. ?

10.  Plaitiff has an environmental illness, a handicap under the Act 42 U.S.C. & 3602(h); 24 CFR

SS 100.20 (1991). For this, only available therapy; avoidance by untreatable; because the current methodologies cannot measure, dictate via x-ray, etc., to diagnose cause and effect for the individualized immunity; one cannot tell sufferer what to eat, use, etc., and it must based on sufferers' trial and error with very time consuming dictative work to find best tolerable substances to be able to eat, use, etc., getting less available. Because I live with unavoidable toxic environment to be extremely sensitive (one (1) percent in population even deicing chemical salt cannot tolerate, etc.) — that leads furthering ascetic life style by total load for loss of tolerance, suffers quietly — the victim of toxic civilization, yet, surrounds me intentionally expose me to toxic environment.

11.   The HUD, "The first government agency amended HUD policy memorandum 'Multiple Chemical Sensitivity Disorder (MCSD)' and 'Environmental illness' as handicaps presented legislative history and case proceedings to back up their official recognition of MCSD as a physiological handicap requiring accommodation on a case by cases. 1992.

12.   "Under the United State: 'HUD has been in the forfront of federal agencies in acknowledging and accommodating people with MCSD. Since 1990, HUD recognized MCSD as a disability under the Rehabilitation Act of 1973 and under the FHAA of 1988 (HUD 1990, 1992). Housing providers are therefore required to provide reasonable accommodation to chemically sensitive individuals'" (Nicolas Ashford, Claudia Miller).

*Mechanisms of Multiple*
*Chemical Sensitivities*
*Possible Physiological Mechanisms*
A useful review of this topic can be found in Bell (1987b). The limited data available at

at this time suggest that any mechanism or model that would purport to explain the syndrome of multiple chemical sensitivities would need to address the features most closly associated with this illness:

1. Symptoms involving virtually any system in the body or several systems simultaneously

2. Differing symptoms and severity in different individuals, even those with the same exposure

3. Induction (that is, sensitization) by a wide range of environmental agents

4. Subsequent triggering by lower levels of exposure than those involved in initial induction of the illness

5. Concomitant food intolerances, estimated to occur in a sizable percentage of those with chemical sensitivities

6. "Spreading" of sensitivity to other, often chemically dissimilar substaces; each substance may trigger a different constellation of symptoms

7. Adaptation (masking), that is, acclimatization to environmental incitants, both chemical and food, with continued exposure; loss of this tolerance with removal from the incitant(s); and augmented response with reexposure after an an appropriate interval (for example, 4 to 7 days), etc. (Ashford, Miller)

15. "At this point, this illness, if it is one, is poorly defined and 'untreatable' by current methodologies. "There is no validated treatment that has been peer evaluated that has shown to make a difference. "I once again told the patient that she needs to 'manage' her

environment to the best of her ability and then try to move through the world as best she can, etc." (Dirk Greineder, MD, PhD, Brigham and Women's Hospital (BWH) (1999).

"It is defined as having extreme sensitivity to multiple, often unrelated chemicals at levels far below those causing reactions in normal subjects, etc." "Multiple Chemical Sensitivity." "The diagnosis is often made on the basis of patient's complaint or upon suggestion by the clinical ecologist, generally without objective known medical explanation of patient(s), etc. "They are generally made without regard to alternative known medical explanations of patients' symptoms, etc." (Johnson T. Wang, MD (MGH)(2004).

16. I moved into 23 C Walker St. Newtonville, MA 02460, <u>June 2007</u>, asked Jonathan L. Hacker, executive director, NHA then; rent adjustment; use non-toxic, non-synthetic chemical products for cleaning, etc., and denied sneeringly, "We don't give rent adjustment, we provide housing!" I contacted HUD Public Housing, Henry Kettel, HUD Fair Housing, the officer, "MCSD needs financial assistance," and Mr. Kettel asked Mr. Hacker, NHA to help me financially. That made Mr. Hacker upset, recived letter from Mr. Hacker for rent adjustment only, etc., inexpiably, and the usage of chemical products, etc., by maintainers; the units, 23A, 23B, and 23D participated NHA to retaliate me. Then Harvey Epstein succeed Mr. Hacker, "Rent adjustment only, using sand not safe for the elderly!" And then Respondent Amy Zarechian (AZ), aka Amy Surtherland, NHA to Mr Henry Kettel, HUD, <u>Jan. 2014</u>, "Individual liability cause, for other people's safety concern, and NHA will not use sand!" In addition, AZ, "People will complaint when we use sand, etc."

17. The NHA's aim, discouraging my residency to stop giving me rent adjustment (alternative to Medicare and Medicate use) monthly, while other tenants receive yearly, the NHA calculated as an expensive lose, and other unlawful purpose. For that, the 23 Walker St. in and around must

chemically laden based on my handicap, MCSD to be inflicted; the Peladow carpeted surface of the ground; tenants and visitors' shoes brought in Peladow sticky chemical component to the surface of floors and stairs to be stained as a partial carpet; and sprayed a strong liquid chemical products, perfume, smoke, etc., to retaliate me.

18. On June 12, 2010, Jason Cerone, maintainer, NHA, when unit 23A complained because I asked her not to use chemical products in hallways as she spraying insecticide, etc., that made me very ill. Jason furiously, "She and I can use here (stepping his foot on to the floor) any kind, etc." On Jan. 23, 2013, 2:40 PM. Jason willfully placed Peladow at entire Horace Mann Complex (HMC) right before my arrival, to expose me fresh toxic chemical product, where there no snow/ice to melt, but intent to injure me base on my MCSD situation, and that stayed dry for days ensued me illness with various symptoms for loss of tolerance [LT] to be suffered. From the outgassed metallic toxicity persisted in the air. Thereby, asked AZ, NHA use sand only by my worsening health physiologically; either LT or overload [masking] for TILT; concomitant food intolerance/chemical products of any kind; eaten, smelled, touched, etc., made my skin burned alike to be bled by unavoidable chemical exposure. AZ, NHA, "I will discuss with Harvey and let you know!"

19. On Jan. 24, 2013, AZ, NHA's false logic with false promises plausibly, "Sand will be used only around your building!" That cannot prevent me for Peladow exposure, yet, I being too ill, unutterable about the Peladow; strong chemical odor outgas; fluffy, sticky texture mingles with sand to be a Peladow; and loses sand's purity and deactivates sand's moisture absorbability. The Peladow and Road salt families are hot rocks, they deliquesces; out gas toxicity from its chemical components, etc., also, cause for overly melting snow/ice, that leaves to the surface of the ground to be flooded or puddled at the elderly/disabled housing complex. From the 504/ADA required surface of floor or ground must be firm, stable, and slip resistance for the people who are in wheelchair, or person with difficulty walking. MCAD, ignored.

20. The sand will be used, Feb. 3, 2013, 4:30 PM, Tony Pugliese (TP), maintainer, NHA patented

the most malignantly toxic snow/ice melter: Peladow moistened by gasoline to loosen pellets be shapeless to dupe me; releases stronger odor and toxicity; stay dry longer on the surface of the grounds; and mixed with Arctic Thaw, etc., Road salt, whichever available carpeted continuously around 23 Walker St.:

A. the hallways, sprayed strong chemical products, etc., by the unit 23A's daughter parthering with TP, maintainer, NHA; cooking illegal drugs; smoking, etc.; designedly to injure me; led me to scream, jumping, etc.;

B. I had to open window and balcony door unwarily, TP, NHA pouring malignantly toxic snow/ice melter onto the surface of the 23 Walker St. entrances and walkways of grounds;

C. minutely my MCSD by exposed to fresh toxic chemical products, erupted my skin with giant rashes, etc., and I could not tolerate even my own cooking smell; cracked my hands and body; bleeded by scretch by too itchiness; my bed clothes, clothing, etc., blood stained; difficulty bottoning, zippering, etc., to wear my clothing with bleeding, swollen hands;

D. yet, unable to avoid toxic chemical exposure began as my every winter months gift by the NHA, and unthinkable harassment by the unit 23A's daughter, its people and others; and

E. the unit 23A's daughter moved in, illegal drug activities; clubbed with same kind of people; smoking; animal farming days and nights; fould in and around 23 Walker St. to in HMC wherever stepped by; intensifying toxic environment against my Allergy and MCSD; nightmares, etc.

22.   On Feb. 4, 2013, I complained to AZ, NHA, mumbling, "Will investigate!" Then Feb. 10, 2013, TP and the unit 23A's daughter carried on exactly the same with the above p. (8) no. 20. to next p. On Feb. 11, 2013, my complaints to AZ, NHA, furiously with evade arrest/evade responsibility, "We accommodated you by salt and sand got it from City of Newton!" The ungovernable AZ's unmitigated

lie! I requested simple "sand" use, the City of Newton never used salt and sand for their road, nor used untreated Rock salt/Halide, and the City of Newton buys treated or formulated chemical products with lowered price. (More detail be stated further down.)?

23. Then AZ, executive director (ED), NHA's Falsi Crimen to me, Mar. 1, 2013, "... Specifically you requested that we use salt and sand during snow and ice removal, rather than a ice melt mixture. "We already begun using salt and sand around your particular building... recent snow storm"( 2/17/2013, 3/20/2013, and so on.)?

25. Susan Korrick, MD, MPH, BWH's writte requests to NHA: July 2012 / May 2013 / November 2013 / December 2013 / December 2014 / March 2015 / Christopher Fanta, MD, BWH, January 2017. Also, my verbal and written requests to AZ, etal. NHA.

   i.  "Her unit must be far away distanced from smokers/neighbouring her unit should be non-smoker

   ii.  "She should have two bedrooms to separate things she cannot tolerate, etc.

   iii.  "No pesticide and volatile chemical products use in and around her buiding and through-out the building [common areas]

   iv.  "Seal the 23 Walker St. residents' doors with door sweepers to limit the odor, cooking, etc.

   v.  "No animal and bird feeding, etc.

   vi.  "Use non-toxic, non-synthetic ice control products (e.g., sand only) around the building and throughout the grounds of the building, etc.

   vii.  Dr. Fanta, "Her apartment complex area you avoid use of rock salt and Peladow and ristrict winter road spreading to plain sand, etc."

26. The above p. (10) no. 25. neglected for other people's safety, etc., and MCAD's rule for the NHA's requisit authority to use toxic chemical products to melt snow/ice at the elderly/disabled housing complex?

27. For the above p. (2) no. 9. received notice, MCAD, Michelle Phillips (MP), Kim V. NHA, et al. MCAD No. 13 BPH 01420  HUD No. 01-13-0346-8, Sept. 30, 2013. "Pursuant to clause III under criteria for processing section of the Coorperative Agreement for the Fair Housing Assistance Program (FHAP) for FY 92, the Commission is hereby notify you that the 100th day has been reached on the above case and it has been impracticable to complete investigation and conciliation or settlement activity for the following reason(s):

    "conducting Legal analysis of information gathered during the investigation."

28. My illness with fright, unable to trust or understood, called MP, unresponsive, and called defendant Eric Bove (EB), acting director of housing unit, MCAD Boston. EB putted me hold for a while and told me, "Your case been transferred to Springfield, MCAD, contact Gilbert May (GM), he is the superviser there, and do not call me!" To disregard the above no. 20., and aimed to dismiss my medical necessity from toxic chemical exposure?

29. The defendant GM, "using sand cause undue burden on housing authority (HA)!" Your investigator is James Brislin, give him a call!" My three (3) calls to defendant James Brislin (JB), the voice mail, "This is the clerk of the court (no name given), etc." No return call to me, then noticed that the HUD investigators and MCAD colluded for underhanded plots to impede my complaint; above no. 27. willfully discriminating my needs of accommodations - only avaiable remed, avoidance - the defendants, MCAD and HUD deprived? Made fun of my handicapped.

30. Dr. Susan Korrick, BWH informed me that JB (MCAD contractor, Springfield), called her and intimidated her, "using sand becomes liability issue and will not use sand other than salt!" That

scared Dr. Korrick, mistakenly agreed with such delinquency not to be responsible for liability; I informed her one cannot utter to MCAD what MCSD sufferer to eat, use, etc.; only the sufferer's risk by trial and error causation to find out best tolerable substances; very difficult task; and wasts much time and money, life with oddness. My visit with Dr. Korrick only for when accommodation request letter needed for my MCSD, and if Dr. Fanta was my doctor then he would not be intimidated from such force or threat of force willfully injure my grievance ⌐?

31. Then the False Pretense for Affidavit of Amy Sutherland (written and pictorial paradox), Dec. 24, 2013 to MCAD, HUD, et al.; that, updated from p. (10) no. 23. move to; "sand and Sodium chloride (nothing more than salt, 'I have bee advised by personnel at the City of Newton DPW, etc.'?); at least the winter of 2012-13; and remains in place for the present winter of 2013-14, etc." The reality, the NHA patented use of Sodium Ferrocyanide (WEGO: $Na_4 Fe(CN)_6$ $10H_2O$ mixed with Peladow dust form to make it white color, similar with Peladow white, and MCAD, HUD, NHA became frients to fool me? The Sodium chloride, NaCl inorganic salt with YPS differs, Rock salt/Halide; naturally occuring mineral and comes with impurities based on where it mined becomes synthetic, etc. Also, even if sand being used next to Peladow, Road salt, etc., it deactivates sand's purity, moisture absorbability, see p. (8) no. 19.

32. The maintainers, NHA, especially TP and Steve Tocci (ST)'s lights on for plotting invidiously to injure my brain, etc., the NHA's joy, and engaged needless toxic chemical products use timely for my in and out (known by my complaints); freshly used chemical products injures me quicker, easy to intimidate, retaliate, or threaten me. Yet, the defendants, MCAD tried to entertain NHA.

35. The AZ, NHA's, "Salt and sand got it from the City of Newton Public Works (CNPW)." The City of Newton buys Road salt from lowest bidders for their winter roads are commercial and industrial use, and all are chemically formulated. The NHA maintainers obtain Road salt freely from CNPW. The Road salt uses parking lot in HMC; the entrances and walkways used Peladow only, and since

2013 winter months, around 23 Walker St. carpeted based on Peladow; dust form or pellets moistened by gasoline or ammonia or chloride, etc.; releases sticky chemical component mixes well with Road salt for; stay dry longer on the surface of the ground; stronger order; higher toxicity with overladen chloride environment, etc., to attack me. This, mixed; next another; loaded in a cart next another with available ones from the below (2013 - 2020)

A. <u>OXYCHEM PELADOW</u> ™ PREMIER SNOW AND ICE MELTER CALCIUM CHLORIDE

Calcium chloride  Potacium chloride  Water  Sodium chloride  Calcium bromide (aB}2), this alone intolerable, yet, combined with the following:

B. <u>The International Salt Company</u>

Arctic Thaw: Inorganic salts (alkali metal halogens)
Sodium chloride  Calcium chloride  Calcium magnesium accetate

Blizard Wizard: Inorganic salts (alkali metal halogens)
Sodium chloride  Magnesium chloride  Molasses  1-CE-B-GONE II

Sodium chloride.: Formular: NaCI
Inorganic and may persist in the environment and is not for food or drug use
Appearance and odor: White crystalline solid. Slight salin odor

C. <u>WEGO CHEMICAL AND MINERAL CORP</u>

Sodium Ferrocyanide: Chemical Formular: Na4 Fe (CN)6  10 H 2O

D. <u>Morton Salt Company</u>

Sodium chloride.: Chemical Formular: NaCI  Yellow Prussiate of Soda Na4 Fe(N)6
Safe-T-Salt Treated Solar (W/o Blue)  Safe-T-Salt Southern Rock (W/o Blue)  Safe-T-Salt Treated Northern Rock (W/o Blue) Including impurities, p. 2of 3: Yellow Prussiate Soda (YPS) may decompose when in contact with strong acids releasing hydrogen cynide gas, etc.

E. <u>Ghadana Company</u>  Ahmed Lotfy Zakaria Habak and Partners

Chemical Product Name: Sodium chloride (salt)  Chemical Family: Alkali Metal/Halide Formular NaCl white christalline solid

## F. Moton Salt Company

Blizzard Wizard Ice Melt Mixtures: Sodium chloride Molasses Magnesium chloride Classification of the substance or mixture CLP- Not classified DSD/DPD - Not classified 10.6 Hazardous decomposition (SAFE DATA SHEET (SDS) p. 5): Will react with strong acids to generate hydrogen chloride and with strong oxidizing agents to generate chloride gas

## G. Ultra Inovative Surface Solution

Mixtures: Sodium chloride Molasses Magnesium chloride Best used for stock pile treatment

## H. Societe De Sel De Mohammedia

Sodium chloride, salt Product use: De-Icer General Industrial and water softenning/ conditioning purpose Mixture: Sodium chloride Sodium Ferrocyanide

## I. TNJ® Specialized In Chemicals: Hefei TNJ Chemical Industryy Co., Ltd. China

Sodium Ferrocyanide Chemical Formular C6 Fe N6 Na4 · 10 H2O
Toxical Data On Ingredients: Sodium Ferrocyanide LD 50; not avaiable LC 50; not available

## J. Eastern Minerals, Inc. Common Product Names: Road salt, De-Icing salt, Sodium chloride, salt

Recommended use: Lowering the freezing point of snow and ice in order to remove it from "Road and Highways" Ingredients: Sodium chloride (NaCl) Trace amounts of Calcium Magnesium Potassium

Sodium Ferrocyanide Decahydrate concentrated from 50 ppm is added at the mine or the load port as an anti caking additive to keep road salt free flowing through spreaders. Also kown as YPS.

Product Information: Incompatible Materials/Materials

Avoid contact with strong acids. Reacts with most non-noble metals such as iron and steel, building materials, "bromine," trifluorid, lithium, especially when wet. Potentially explosive re-

action with dichloromaleic anhydride and urea (PELADOW)? Electrolysis of mixtures with nitrogen compounds may form explosive nitrogen trichloride.

k.   ICE B'GONE®
   (3) Chloride Contents
      Magnesium chloride  Calcium chloride  Sodium chloride  Potassium chloride

   (4) Miscellaneous Components
      (a) Sulfate content, etc. (b) Phosphorus content, etc. (c) Cyanide CN, etc. (d) Nitrate No, etc.

L.   MORTON SALT, INC.

   Product Name            · Blizzard Wizard, Bulk Blizzard Wizzard

   3.2 Mixtures
      Chemical Name
         Sodium chloride  > 98 %  Molasses < 0.5 %  Magnesium chloride < 0.5 %  YPS < 0.01 %
   10.5  Incompatible Materials
   • Strong oxidizing agents, strong acids
   10.6 Hazardous decomposition products
   • Will react with strong acids to generate hydrogen chloride and with strong oxidizing agents to generate chlorine gas (Peladow alone outgass, yet, added gasoline, ammonia, chlorine, etc., to the above, which kind availability ?). YPS may decompose when in contact with strong acids releasing hydrogen cyanid gas.

M.   The above, unregulated (not availble SDS) chemical prouct mixture - malignantly toxic chemical products (MTCP) - needlessly being used where there no snow/ice to melt, yet, the NHA's willful intent; let it stay dry on the surface of the grounds; and accommodates (discriminate, retaliate, etc.) my handicap MCSD to be unwariest approximately from Nov. to Mar. every year gift to me. The path for my chronic re-exposure becomes major exposure to MTCP with minute exposure, cause for injury furthering disability, etc. The NHMC, elderly/disabled housing complex, not a commercial or industrial building, and snow must plow or shovel completely to make drier surface of the grounds. Never allow melting snow using MTCP, makes overly moistured surface of the grounds, and the uneven surface of the grounds, floods or puddles; unconscionable and impertinent?

36.     "FN 11. Pursuant to 42 U.S.C. § 3603, federally assisted public housing authorities such as the BHA are governed by the antidiscrimination prohibitions of 42 U.S.C. § 3604 (f). Title 42 U.S.C. § 3604 (f)(3) provides, in pertinent part:

"To make a reasonable accommodation request, no "Magic" *848 words are required. The joint statement resolved that, under the FHAA:

"[A disabled resident or an applicant for housing] makes a reasonable accommodation request whenever she makes clear to the housing provider that she is requesting an exception, change, or adjustment to a rule, policy, practice, or service because of her disability.... *An individual making a reasonable accommodation reqest does not need mention the Act or use the words 'reasonable accomodation.'* However, the requester must make the request in a manner that a reasonable person could understand to be a request for an exception, change, or adjustment to a rule, policy, practice, or service because of a disability.  (Emphasis added.)

"[6][7]c. *The nexus requirment.* Under the FHAA, refusal reasonably to accommodate a disabled tenant is discriminatory when 'such accommodations may **860 be necessary to afford such person equal opportunity to use and enjoy a dwelling.' 42 U.S.C. § 3604 (f)(3)(B). In other words, a reasonable accommodation is required where there is a causal link between the disability for which the accommodation is requested. The BHA claims that Bridgewaters has not established a nexus or causal link between his disability and the assult on his brother.

"** 861 4. *Conclusion.* Bridgwaters's twin brother has the right to be *850 safe and secure in his home, as do all tenants of public housing. We do not minimize the severity of the attack on him. However, the law mandates that, before a public housing authority may terminate the lease of a disabled tenant such as Bridgwaters because he poses a significant risk to the health or safety of others' that cannot be eliminated by a reasonable accommodation, 24 C.F.R. § 9. 131(b), etc." Boston Housing Authority v. Bridgewaters
452 Mass. 833, 898 N.E.2d 848, 38 NDLR P 141 (2009)

39. For the above, the NHA and its lawyer John Egan (JE) vetoed, inveighed with inveiglement, and lawed; paltry subterfuge against my complaint to MCAD, July 12, 2013.

"..... kim is not the only person who resides at 23 Walker St.;... other families residing in the ...building, and their physical safety and well being requires the Respondents to take reasonable steps to keep the exterior walkways and stairs clear of ice and snow during the winter months. "Those reasonable steps demand some substance be spread (poured) on frozen ice or snow... to accelerate the process by which melting occurs (to accumulate moisture). "The spreading of nothing more than sand does not accomplish that. "If kim is granted her latest request, the health and safety of other residents of (and visitors to) 23 Walker St. will be unfairly and unreasonably jeopardized, and the NHA... vulnerable to tort claims asserted by those who may slip and fall on ice and snow that was not reasonably kept clear from the exterior walks and stairs in and around the building. "State and Federal antidiscrimination laws cannot be construed to impose such an irreconsilable delema on a public housing authority."(?) (Emphasis on preference and refusal, that my chemical injury, and slip and fall over sand, unimpeachable ?)

"Individual liabilities

    "Citing Woodason v. Town of Norton, 24-MDLR 21. 26 (2002); Harmon v. Malden Hosp., MDLR 157, 157 (1997).

    "In orde for an individual to be held liable for a violation of M.G.L.c. 151B, there must be some showing of his or her intent to discriminate, through an action or inaction in deliberate disregard of the Complainant's rights. (?)

"The... complaint is devoid of evidence of an 'intent to discriminate' the..... Sutherland, Hacker, and Pugliese accordingly cannot be found individually liable.

"..... Boston Hous. Auth. v. Bridgewaters, 452 Mass. 833, 850 n. 26 (2009). "There must be also

be a nexus between the alleged disability and the accommodation that is sought. That is, the accommodation must be reasonably tailored to the manner in which the plaintiff's disability makes it impossible for her to use and enjoy a dwelling. "If the accommodation bears no relation to the disability, or if it has no ameliorating effect on the plaintiff's inability to use and enjoy a dwelling, then it is, by definition, unreasonable. *Bridewaters, supra, 452 Mass. at 848.*" (I untutored to know what meas?) "*Andover Housing Authority v. Sholnik, 443 Mass. 300, 309 (2005),*" would it be:

"In the public housing context, a 'qualified' handicapped individual is a person who could meet the housing authority's eligibility requirements for occupancy and who could meet the conditions of a tenancy, with a reasonable accommodation or modification in the authority's rules, policies, practices, or services." Andover Housing Authority v. Shkolnik, 443 Mass. 300, 820 **N.E.** 2d 815 (2005)

"The reasonable accommodation rules that have been applied to employers was applied to a tenant who claimed to be handicapped in a summary process case. Andover Housing Authority v. Shkolnik, 443 Mass. 300, 820 N.E. 2d 815 (2005), holding that the authority did not violate the unlawful discrimination statute by failing to reasonably accommodate the tenant's medical conditions." 11A MAPRAC § 28.3

38. Who informed me, "I am your last investigator Shree McClain (SM)!" The defendants, MCAD agreed with the above p. (19) no. 37. to next p., and disserved and unmade of my complaint with evidences. The Erro Apparent Misrepresentation arrogated:

A. "On June 6, 2013, Complainant [Kim] filed a complaint with this Commission against Respondents NHA(NHA), et al., in violation of M.G.L.c. 151B, §4, 4A, 7A? Irrationality and irrelevance to dupe me from p. (2) no. 9., p. (11) no. 29., and intrigued me. *False entry of facts?*

B. "NHA engaged in a dialogue with Complainant in an attempt to understand her changing requests over the de-icing product, and that NHA... responded Mar. 1, 2013, ... sand and salt use? See p. (12) no. 35. – p. (14).

C. "..... Respondents assert that using sand... constitute an undue burden... sand provides traction (?), it does not melt ice... that salt does... the public safety risk of slip and fall accidents for the other tenants and guest of the public housing complex, Respondents... that it is*unrea-

sonable request for the Respondents not to de-ice... walkways at 23 Walker St., particula-arly where there facility houses... who are elderly and/or handicapped ?

D. "Individual liability requires... named had the authority or duty to act on behalf of the Respondents and acted in deliberate disregard of Complainant's rights, allowing the in-ference of intent to discriminate. Even assuming that Ms. Sutherland (Executive Director of NHA), Mr. Hacker, and Mr. Pugilese (sic) each had the requisit authority, there is insuf-ficient evidence to support that they acted in deliberate disregard of Complainant's rig-hts unde M.G.L.c. 151B to raise an inference of intent to discriminate." ?

E. The NHA's refusal since (2004) inexpiably by Mr. Hacker, rent adjustment only (even rent adjust-ment disallowed, but Mr. Kettel asked NHA do so, and HUD pays Mr. Hacker had to allow. That made Mr Hacker upset, and NHA spends money paying lawyers take care of any matter, etc., prodigally while I, or others cannot afford ?) (1) too expensive for the HA; (2) not mandated to accommodate MCSD; and (3) housing development this type does not meet your needs as it must meet the needs of a greater number of people, and cannot sacrifice the needs of a great num-ber of people for the needs of one individual ? Thence, Mr. Epstein succeeded, "Provide document from your health care provider specifying what chemicals in Peladow snow and ice m-elt to which you react, etc." (2012). (p. (7) no. 19. to p. (8))

F. Yet, defendants, MCAD ranked the NHA employees with unbounded enthusiasm for requi-sit authority to use own patented malignantly toxic chemical products to retaliate me unavoidably every winter, that I become a burned like person with skin disorder, etc. And those concerned elderly/disabled had has to walk, roll wheel chair over the toxic chemical products, flooded, or puddled surface of the grounds? *An unmitigated disaster!*

G. There no reference to HUD/DHCD/ADA/504. regulated maintenance of the elderly/disabled housing complex surface of the grounds for the winter months; the defendants must

present evidence for when and where ther the NHA ever attempted to use untreated Rock salt or sand around 23 Walker St., and even sand alone being used around 23 Walker St. next to Pela-dow, the Peladow mingles with sand to be toxic. That will make sand to loose its moisture ab-sorbability and purity and becomes as a Peladow, unless, the entire HMC uses sand to maintain clean environment for the tenants' well being ? (p. (8) no. 19.)

H. The investigator SM, MCSD issued "Lack of Probable Cause" HUD No. 01-13-0376-8/MCAD No. 13BPH 01420 (p. (2) no. 9., p. (11) no. 29.), Feb. 28, 2014, So Lawed the NHA's unlawful housing practice privi-leg under M.G.L. c. 151 B to raise an inference of intent to protect ?

39. I lived State funded elderly/disabled housing when snowed, the maintainers shoveled quickly, and seldom spread plain sand on the surface of the ground. Though, in Spring the sand irri-tated my eyes when wind blow the sand visited my eyes. There maintained around apartments; cl-ean; the rubbish dump area, unseen gabages, etc. To the contrary the HMC, the rubbish area; fouled, slummed, surrounde by garbage, etc.; the maintainer Tony Pugliese, plow snow slowly and incomp-letely, pours toxic de-icing chemical product to melt snow; or no plow and use chemical produts, entrances, walkways, parking lot, and stairs, never plow or shovel, yathe let chemical product melt snow. Poorly maintains surroundings of building, and rubbishes here and there I pick up that I am very upset about rubbish dump area. TP's excitement pouring chemical products onto the surface of the ground, and never cares clean landscape of the HMC, NHA.

40. M. G. L. A. 151 B § 4 (6)(7) ..... if the housing owner or manager register biennually with DHCD. For the purpose of this subsection, housing intended for occupancy by persons fifty-five or over sixty two or over shall comply the provisions set forth in 42 USC 3601 et seq.

41. "[FN1] Whalen v. Nynex Information Resources Co., 419 Mass. 792, 647 N. E. 2d 716 (1995), quoting Cox v. New England Telephone and Telegraph Co., 414 Mass. 375, 607 N. E. 2d 1135 (1993)

"To prove a claim of employment discrimination in violation of the Federal Statute, a plaintiff must demonstrate that he or she: (1) is a handicapped person; (4) that the positio is part of a program receiving Federal financial assistance." 14A Mass Prac., Prima Facie Case § 28.3 (5th ed.)

42. "According to the dissent, the definition of a 'qualified handicapped person' in G.L.C. 151B includes an employee who has engaged in egregious misconduct, but who could, in the future, perform his job without such misconduct. "Thus, we cite variously to interpretations of provisions of both of these acts that are analogous to G.L.C. 151B, particularly the portion of the acts requiring an employee to be otherwise qualified for position in order to be eligible for statutory protection.

"FN1. I agree that summary judgment was proper on the plaintiff's claim of discrimination under our equal rights statute, G.L.C. 93 § 103, not for the reason set forth by the court, but because this court consistently has treated G.L.C. 151B as the exclusive remedy for claims of handicap discrimination arising out of employment against employer with six or more imployees.

"It follows that a handicapped employee whoes disability compels him to behave in a unprofessional manner, or whoes behavior poses a safety risk to others has no chance of damonstrating that he is a 'qualified handicapped employee' under G.L.C. 151B."
Mammon v. President and Fellow of Harvard College, 446 Mass. 657, 847 N.E.2d 276, 209 Ed. Law Rep. 389, 17 A.D. Cases 1680

43.     "19. Some time thereafter, Respondent Scanlan stopped using the products Mr. Christi-

ansen had told Complainant that Respondents use. Scanlan did so on the stated ground that other tenants complained that these products were ineffective. Respondents therefore did not use any other products that the Complainant suggested would be non-toxic to her.

"20. It would not have been unduly burdensome for Respondents to have used or attempting to use other products that would have been non-toxic to Complainant.

"IV.  CONCLUSION

"4. Pursuant to paragraph 812(g)(3) of the Act. 42 U.S.C. § 3612(g)(3) assesses a civil penalty against each of the Respondents." HUD ALJ 09-91-1995-1 (1991)

45.  On July 10, 2014, appeal hearing, by defendant Jamie Williamson (JW), Investigating Commission, MCAD, "You are from Rubin and Rudman, JW impressly looking at the NHA's lawyer JE, 'he is saying did not use chemical products,' 'it is reasonable accommodation they accommodated you with no smoking policy stated here in Respondents' Position Statement!'" [1] No smoking policy not based on my needs, it initiated by HUD initiation for the public housing tenants, and I was victim by 23 Walker St. Apt. A people, the NHA let it be against me:

(a) to the contrary, my inabilities to function well, yet, tried to utter, the defendant JW's frowning face glared at my disadvantage, JW's seamiest preference, etc. ;
(b) issued NOTICE OF FINAL DISPOSITION: "Lack of Probable Cause Finding in this case affirmed, this means that investigation, and appeal evidence fails to establish sufficient evidence to an unlawful act of discrimination committed, July 28, 2014." Limitation emphasized ?; and
(c) I submitted pictures of de-icing chemical products laid on a surface of the grounds, sbs obtained by City of Newton, etc. That what more information been sufficient to relieve my rights to be free from

toxic chemical exposure, what could be needed for removal of readily achievable barrier for the individualized suffer with MCSD, and the dfendants, MCAD's Sub Color Offical neglected my avoidance necessity?

46. The defendants, MCAD, HUD, et al. granted terms, conditions, privileges, etc., to NHA employees, the unit 23A people, et al., and that led their victory, celebrated with invidious project fiercely against my handicap, MCSD be immerced in toxic environment. The NHA intentionally let the unit 23A's daughter smoking, illegal drug activity (making, etc), policeman picking up the needles, etc.

47. I made complaint to HUD, and HUD reluctantly accepted my complaint by prior one MCAD dismissed with, the unit 23A's daughter lives in Lincoln against my words. HUD No. 01-15-0118-8, to MCAD, 42 USC 3610(f) / MCAD No. 14 BPH 03167, the defendant EB, MCAD Boston, reassigned defendant SM, MCAD Worcester. 1 I requested EB change investigator to MCAD Boston, and EB's response to me, "once case assigned to investigator, it cannot change!" 2 changed from MP, MCAD Boston, JB, contractor, MCAD Springfield, whoes effrontery, intimidated Dr. Korrick agree to salt use (p. (11) no. 30. to next p.) for the NHA unlawfully, then to SM? 3 the EB's indignity/odium against my complaint to be misconducted peremptorily for dismissal to discriminate my civil rights?

48. The Respondent's Position Statement, Jan. 23, 2015; and Supplemental Position Statement to MCAD, Feb. 24, 2015.

49. I submitted my Rebutal Statement with requested evidence submission be extended, Feb. 24, 2015 agast Respondent's Supplemental Position Statement (RSPS), and I hand delivered to MCAD Boston Mar. 2, 2015:
    (i) that, the defendant SM, MCAD Worcester copied RSPS again participating whatever inveigled by the Respondent's lawyer JE, and dismissed my claim about the unit 23A's daughter smoking, etc.;
    (ii) this dismissal examination necessitates from the original document for signature authenticity?;

(iii) my document submitted, Mar. 2, 2015, to MCAD Boston, and defendant SM, in MCAD Worcester; the RSPS, dated, Feb. 24, 2015; the defendant SM's dismissal, also dated, Feb. 24, 2015; that means, the NHA's lawyer JE's written pretense, shared with defendant SM by e-mail, fax, etc., using same date to trick me against p. (25) no. 49 **?**;

(iv) though, already submitted evidence could conduct matters accordingly, yet, SM, protected Respondent, NHA's unlawful act, and disserved and unmade of my rights with *an unrighteous law;*

(v) on Mar. 7, 2016, Saturday, only mail in my mail box; white envelope; two (2) forever stamps on; not franked as official mail does**?** Therein, presented friendships; the defendant SM, MCAD with AZ, NHA and lawyer JE, NHA's legerdemain for as I, *a dupe of communism* to be *an unwitting victim of fraud; and*

(vi) that intensified me with noisomely for invidious intent; that my living unwarily with unwholesomeness by foul mouthed unit 23A people, et al., accused me traducingly to be appeared in Newton District Court by police men's command prejudicially, Apr. 10, 2015, and received threatening letter for an attempted eviction proceedings to accommodate unit 23A's daughter's peaceful life; given her privileges to smoke, illegal-drug activities, etc., by NHA's lawyer Harvey Alford, Apr. 2015. My misventure for an unfortunate fate with unavoidable dupery, the defendant SM, MCAD, protected NHA and the unit 23A people's requisit authority and rights to retaliate me, and not subjected to the law **?**

50. The harassment by TP, maintainer, NHA, Feb. 6, 2013, 9:03 AM, that, the defendant SM, MCAD, accepted respectably with whatever the NHA's lawyer JE's rebuff and rebutal against me, nos. MCAD 13 BPH 01420/ HUD 01-13-0378-8, July 12, 2013, and defendant SM, MCAD, led NHA employees' persistant vituperation, etc. vindictively based on my handicap, MCSB be injured ineluctably. Thence, the defendant, SM ruled for the NHA employees in favor against my grievance, Feb. 28, 2014, and allowed me for toxic chemical exposure to be a chemically injured person **?**:

(a) on Jan. 16, 2015, TP, NHA, started 7AM, unusually early morning; ammonia moistened Peladow mixed with Road salt (pp. (12) - (14), poured by scoop around 23 Walker St., on top of the dusty

snow excitedly, while the sun, started to shine, and the sun would deliquesce dusty snow itself, yet, intentionally started 7AM laid toxic chemical products around 23 Walker St. to injure me in advance to melt my brain. The NHA's aim to imperil my handicapped be docile for the TP, et al.;

(b) the other building entrances and walkways, poured ammonia moistened Peladow by scoop spacing little bit to next; stay dry hard, releasing toxicity agast me (my MCSD); and that had has been my winte season reward by TP, et al. NHA's willfulness using toxic chemical products, etc., as a fun for them from my being in suffered damages;

(c) then 8:45 AM right before my coming out (Friday my grocery shopping day, TP, et al. set up things to melt my brain, as I used to offer them for their wants, because of my being injured physiologically: partial complex disorders, chronic fatigue syndrom, etc., becomes a beaten up person, let those bad people exploit peasant labor, and my docility by incapacity to please those hideous monsters untill I can be tenable position with tenaciousness.) timely, the TP's oddity obsessively came back to my back entrance (I only use); the cart top interior, stained thickly by hardened by Peladow residue; loaded Peladow next to Road salt; and putted Peladow on top of already laid Peladow and Road salt;

(d) thence, TP had to deshape Peladow pellets, pressed hard by his feet boots on to mix well with Road salt to injure me, etc. The Road salt changes color and texture when mixed with Peladow, etc.; toxic level higher to detriment my health; and I unfortunately unable to video tapped by unable to use, becomes overlapping chemical exposure by battery, etc., I cannot hold steadily, etc.;

(e) after TP left my buiding area to meet Marcus Henriks, who takes me for shopping, etc., Marcus and I were taking pictures of the chemical products laid on the surface of the grounds, and suddenly someone yelling at me, for my partial complex disorder (PCD); partial complex seizure disorder (PCSD), etc., already I, with loss of tolerance by toxic chemical exposure. That, Juan Saez, maintenance foreman, NHA, who had been attempted to harass me

bothersomely, and other maintainers mistakenly my dysfunction as my interests of loving them, etc., by NHA maintainers;

(f) made complaint for retaliation to rectify the defendants, MCAD's misconduct against my complaints, nos.: MCAD 15 BPH 0015/HUD 01-15-0199-8, to prove where there ever been used untreated colorless Rock salt, or salt and sand, as NHA emphasized to MCAD; and

(g) resulted MCAD's preference for the NHA employees, carried on NHA's lawyer JE's pretentious dogma, and neglected my complaint, as futile; only for dismissal by defendant SM, MCAD, May 8, 2015 ?

51.  For these, the Secretary of the Housing and Urban Development paid to MCAD to conduct a perverted idea of justice to discriminate handicapped person's crucial remedy for survival; avoidance, as medical necessity from malignantly toxic chemical exposure; yet, defendants, MCAD's dicta favored NHA's requisit authority and rights limitlessly ?

52.  The MCAD, HUD, et al., granted NHA employees' requisit authority to protect other tenants' safety and health, contrary my requested use simple sand to control ice if any, encountered as an explosive weapon(?), and disqualified my otherwise qualified handicapped person under G.L.C. 151 B ? The MCAD and HUD's jurisdiction imputed to my otherwise qualified handicapped person's otherwise qualified inquiry to be discriminated against for accommodation unrequired to be affirmed ?

53.  That caused me a desperate illness in desperate needs; I tried to seek medical necessity accommodation under the FHAA., and so on, yet, contradicted. Because of the MCAD, HUD, et al., prevailed NHA employees' Lawless Acts; that Falsicrimen of Unlawful Ab Initio since December 2008, cannot be expose to the laws; and the MCAD and HUD obligated to protect the NHA. Thence, I to be precluded in furtherence making any Ad Melius Inquirrendum against NHA's employees? That illustrated, as I committed inexpiable crime by the

Respondent JE's stereotyped dogma, "MCAD, HUD, et al., dismissed, the Court dismiss; "she is enjoined filing papers with federal Court; "her complaints dismissed."

54.  I complained to Middlesex State Court, Civil Action No. 1581 cv 1104, JE moved to federal Court, Case No. 1: 15-cv-11487-GAO, and dismissed, <u>Sept. 14, 2015</u>. Thence, the NHA employees' retaliation against me, out of control, I attempted to restrain, and again complained to Middlesex State Court, Civil Action No. 15 cv 5666, JE's dictum, No. 15-5666-J, <u>Oct. 8, 2015</u>, compelled me for "protective order," "... the Court... enter an order requiring the Regional Administrative Justice, et al.'s review any further filings submitted by this abusive litigant before they accepted for, etc." Conspiracy against my grievance, the MCAD and HUD held inference of intent to dismiss my complaints, participated with Respondent JE, et al.'s tempted conspiracy, interfered my civil rights, etc. ⁊

55.  The accommodation I requested does not cause undue burden on NHA, using *sand* to control ice, less, laborious, wasteful, etc., environmentally safer for the vulnerable elderly/disabled people's well being. Thereby, the defendants, MCAD, prove, what best available objectionable evidence empirically on the basis of legal, medical, science, etc., to ascertain that using *sand* to control ice at the elderly/disabled housing complex winter road, unsafer? The snow must plow or shovel, must not use toxic chemical products to melt making flooded/puddled road, etc.? Yet, MCAD asserted unconscionably, the snow/ice must melt, use of toxic chemical products than prevent icing, using *sand*, that subjected to individual liability cause by slip and fall; undue burden on housing authority; and other tenants' safety and health priority must, necessitates NHA's unlawful housing practice against person with MCSD to be injured; chemically injured person how long ⁊

56.  The defendants, MCAD's immanence held misrule unduly discriminated against handicapped, minority public housing tenant, resulting her Summa Injuria, including for

(29)

but not limited to ineffable physiological distress; expenenses; interfered equal opportunity to use and enjoy a dwelling and common areas of the R3 Walker St.; where my unit is with "the nightmare of urban loneliness"; extrimity for concomitant food/chemical intolerance; only be able to eat several tolerable unspiced food; salt, soy souce, etc., free for survival; the MCSD, quiet sufferer's life with toxic induced lose of tolerance (TILT)?

57. The dendants, MCAD's agreement with NHA's so to be discriminated policy, aimed to expose me to Peladow must, and the unit R3A's noisome daughter's limitless smoking, etc., until my brain be melted unconsciously begging to be slaved for the prerogative, or to be locked in psychiatric hospitals. That can cease NHA's prodigal rent adjustment (Medicare/Medicate alternative by my MCSD situation), etc. The MCAD, since 2001, Massachusetts Commission Against pauper, minority, handicapped, etc., person, had has no rights to disturb such as NHA. Because, we disabled public housing tenants, depend on government programs, and unable to obtain exorbitant attornies as NHA can? Thence, the defendants, MCAD's investigator, Shree McClain's false entry of facts, p. (20) no. 38. A. To the contrary HUD No. 01-13-0376-8 (42 U.S.C. 3601, et seq.), May 22, 2013, for (42 U.S.C. 3610 (f)), July 18, 2013, to MCAD No. 13 BPH 01420 for (FHAP) (FY 92); p. (11) no. 27., and so on? Yet, the defendants, MCAD's prejudice impured to deprive neediest person's any rights, etc., should be protected under the 42 usc 3601, et seq., and so on? For that, plaintiff declairs suffered damages below, must be responsible based on each defendants' fatum against handicapped person.

58. As such, the Legal Cause for the handicapped person's injury with Nullius Juris by the defendants, MCAD's negligence, and that limits summariness to meet this Court's expectation be considered. That, this Court, the laws, the rules, the policies, etc., could not see the helplessly handicapped woman, shackled in violence for how long? For that, this Court, redress for there never will be with Nuisance Per Se with equal rights with law worthy

for the otherwise qualified handicapped person's rights, that who governs and governed by Federal Regulations by receiving Federal Funds for the protective class?

59. Under the Supreme Law of the Land — The Best Legal System in the World — Plaintiff, handicapped, extreme chemical/environmental/electromagnetic fied sensitivities; and limits personableness to this Court or to anywhere. For this, requires re-request for accommodations if possible on the basis of 29 USC 794 (2000); 24 CFR 8.3 (2008), etc., be considered by exception to the requirment of the "Rule 8(a)(1)(3) of the rules of Civil Procedures, and so on." That, for the plaintiff, writing this ordeal, direct formal-dehyde, latex, etc.; overlapping chemical exposure; difficulty to write; dyslexia, transposition of letters, etc.; long and hard troubling courses of very time consuming effort torturously; and how many papers be wasted, etc. Thence, impossible to present compendious compendium, rather expatiated to this Court be venial. In addition, plaintiff's incapacity, unable to comply with any Court/Law procedure/proceedings, and this Court, well documented nightmares by plaintiff's handicapped exhibition unknowingly be bearable.

60. As the reasons stated above, plaintiff prays that this Court relief be granted because plaintiff has suffered damages, but not limited to for (*compensatory damages; damages for sever emotional and physical distress; consequential damages; punitive damages; costs and fees; interests; plaintiff's file be protected*), and leave to attach copy of this facts with HUD complaint be permissible.

61. WHEREFORE, plaintiff demands judgment against each defendants for damages and such other relief as this Court deems just.

62. Plaintiff demands a trial by jury.

Oak - hee Kim, Pro Se Litigant
23 Walker Street, Apt. C
Newtonville, MA 02460
(617) 964 - 1587